UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PATIENCE G.,

                                                Plaintiff,

v.                                                                                    3:23-CV-0677 (TJM/TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF STEVEN R. DOLSON PLLC<br>6320 Fly Road, Suite 201<br>East Syracuse, NY 13057<br>Counsel for Plaintiff | STEVEN R. DOLSON, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>OFFICE OF THE GENERAL COUNSEL<br>6410 Security Boulevard<br>Baltimore, MD 21235<br>Counsel for Defendant | JOHANNY SANTANA, ESQ. |

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT-RECOMMENDATION

       Patience G. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), denying her applications for Disability Insurance Benefits and Supplemental Security Income. Dkt. No. 1. Plaintiff did not consent to the jurisdiction of a Magistrate Judge. Dkt. No. 9. The matter was referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). *Id*. Both parties filed briefs, which the Court treats as motions under Federal Rule of Civil Procedure 12(c), in accordance with General Order 18.

Dkt. Nos. 14, 16. For the reasons set forth below, the Court recommends Plaintiff's motion be denied and Defendant's motion be granted.

I.     BACKGROUND

Plaintiff was born in 1979, she completed two years of college, and previously worked as a corrections officer. T. 42-43, 56.[1] On July 30, 2021, Plaintiff protectively filed an application for social security benefits. *Id*. at 310-21. She alleged disability beginning February 23, 2019, due to lupus, scoliosis, asthma, arthritis in the back, and anxiety. *Id*. at 57. Her claims were initially denied on September 22, 2021, and again upon reconsideration on January 3, 2022. *Id*. at 142-61, 196-207.

On July 6, 2022, Plaintiff appeared before Administrative Law Judge ("ALJ") Elizabeth W. Koennecke. *Id*. at 38-55. On July 20, 2022, the ALJ issued a decision finding Plaintiff was not disabled under the Social Security Act. *Id*. at 12-31. The Appeals Council denied Plaintiff's request for review on April 20, 2023, making the ALJ's decision the final decision of the Commissioner. *Id*. at 1-6. Plaintiff timely commenced this action on June 7, 2023, challenging the Commissioner's decision. Dkt. No. 1.

II.    LEGAL STANDARDS

   A.     **Standard of Review**

In reviewing a final decision of the Commissioner, a court must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision. *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013). "Failure to apply the correct

---

[1] The Administrative Record/Transcript is found at Dkt. No. 13. Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Citations to the parties' submissions will use page numbers assigned by CM/ECF, the Court's electronic filing system.

2

legal standards is grounds for reversal." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks and citation omitted). Therefore, a reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986-87 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020) (internal quotation marks and citation omitted). If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive. 42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995). Further, where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on Behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)) (additional citation omitted). If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v.*

*Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford* 685 F.2d at 62) (additional citations omitted).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *See Rutherford*, 685 F.2d at 62.

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g.*, *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony").  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004) (citation omitted); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.  *See Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Pratts v. Chater*, 94 F.3d, 34, 39 (2d Cir. 1996).  Remand may also be appropriate where the ALJ has failed to develop the record, adequately appraise the weight or persuasive value of witness testimony, or explain his or her reasonings.  *See Klemens v. Berryhill*, 703 F. App'x 35, 35-38 (2d Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Estrella*, 925 F.3d at 98; *Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008); *Pratts*, 94 F.3d at 39.

    **B.**    **Standard for Benefits**

To be considered disabled, a plaintiff seeking disability benefits must establish she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

4

can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).[2]  Additionally, the claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The Social Security Administration regulations outline a five-step process to determine whether a claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess*, 537 F.3d at 120; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v)).  The claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If the claimant meets his or her burden of proof, the burden shifts to the Commissioner at the fifth step to prove the claimant is capable of working.  *Id*.

---

[2]  While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, therefore, "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

## III.   THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  T. 15-31.  At step one, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2022, and has not engaged in substantial gainful activity since February 23, 2019, the alleged onset date.  *Id*. at 18. Proceeding to step two, the ALJ determined Plaintiff has the following severe impairments: systemic lupus erythematosus and obesity.  *Id*. at 19-24.  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  *Id*. at 24.

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).[3]  *Id*. At steps four and five, the ALJ found Plaintiff cannot perform any past relevant work but there are jobs that exist in significant numbers in the national economy she could perform.  *Id*.  In making the step five determination, the ALJ utilized Medical-Vocational Rule 202.21, which directed a finding of "not disabled."  *Id*. at 30-31.  The ALJ noted even if Plaintiff was limited to a sedentary exertional level, Medical-Vocational Rule 201.28 would also direct a finding of "not disabled."  *Id*. at 31.  Accordingly, the ALJ concluded Plaintiff has not been under a disability, as

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. §§ 404.1567(b), 416.967(b); *see also Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) ("The full range of light work requires intermittently standing or walking for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time.").

defined in the Social Security Act, from the alleged onset date through the date of her decision. *Id*. at 31.

IV.   **DISCUSSION**

Plaintiff argues the ALJ's decision is not supported by substantial evidence. *See generally*, Dkt. No. 14. Specifically, Plaintiff contends the ALJ committed reversible error by failing to properly evaluate the medical opinion evidence. *See id*. at 5-10. In response, Defendant asserts the ALJ's decision denying benefits applies the correct legal standards and is supported by substantial evidence. Dkt. No. 16 at 7-16. As explained below, the Court agrees with the Commissioner.

   A.   **Opinion Evidence**

On September 21, 2021, state agency medical consultant Dr. A. Susarla reviewed the then-available medical evidence and opined Plaintiff could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds. T. 56-68. He also found Plaintiff could sit for six hours in an eight-hour workday with normal breaks, and stand and/or walk for six hours in an eight-hour workday with normal breaks. *Id*. Dr. Susarla assessed no other limitations and determined Plaintiff is capable of performing light work. *Id*.

The ALJ found Dr. Susarla's opinion "persuasive because it is based upon the objective clinical findings of the medical evidence that was made available for review and the objective clinical findings are consistent with the complete record of medical evidence that was available at the hearing level." *Id*. at 27. "Additional support for Dr. Susarla's opinion is consideration for his professional training and experience in reviewing medical records, his knowledge of the Agency's medical regulations for determining disability, and for citing to the specific medical evidence that supports his findings." *Id*.

On December 21, 2021, state agency reviewing consultant Dr. S. Ahmed indicated "[u]pon review of the existing and new MER the prior decision is affirmed." *Id*. at 97. Specifically, Dr. Ahmed opined Plaintiff could occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, and sit for six hours in an eight-hour workday with normal breaks. *Id*. at 95. Like Dr. Susarla, Dr. Ahmed assessed no manipulative or balancing limitations. *Id*. at 96-97. However, Dr. Ahmed determined Plaintiff could only stand and/or walk for four hours total in an eight-hour workday and assessed postural limitations. *Id*. at 96.

The ALJ found Dr. Ahmed's opinion less persuasive because the "additional medical evidence made available to Dr. Ahmed prior to his determination, the treatment records from the claimant's primary care provider and rheumatologist failed to report abnormal findings." *Id*. at 27. For example, the ALJ cited "a lumbar spine MRI indicated mild degenerative disc disease, an EMG that was unremarkable, and asthma that remained nonsevere." *Id*. The ALJ observed Plaintiff "reported and/or endorsed chronic fatigue, arthralgias, myalgias, diffuse tenderness, back and bilateral hip pain and swelling in her hands attributable to the lupus." *Id*. However, Plaintiff "indicated in the psychiatric CE that she was able to perform household chores, including cooking, cleaning and laundry." *Id*. The ALJ noted "[n]o fingering or handling limitations were given which is consistent with the regular smoking activity as well as the intermittent jewelry making activity." *Id*. Thus, the ALJ concluded Dr. Ahmed's "more restrictive limitations of standing and/or walking four hours and occasional climbing of ramps/stairs, stooping, kneeling, crouching and crawling, and no climbing of ladders/ropes/scaffolds is based upon the claimant's subjective complaints rather than the objective clinical findings of physical examinations, laboratory studies, radiograph imaging and cariology testing." *Id*. at 27.

On May 26, 2022, Elizabeth B. Moore, FNP-C ("NP Moore"), completed an RFC questionnaire. *Id*. at 876-78. NP Moore indicated she had treated Plaintiff two to four times per year. *Id*. at 876. Plaintiff's diagnoses were listed as systemic lupus erythematosus, scoliosis, and chronic pain syndrome. *Id*. at 876. Her prognosis was "fair but with declining health." *Id*. at 876. NP Moore indicated Plaintiff's medications, "diclofenac, naproxen—works well, but causes finger swelling" and stated Plaintiff cannot exercise due to pain and fatigue. *Id*.

NP Moore opined Plaintiff could occasionally lift less than 10 pounds, never lift twenty pounds, occasionally twist, stoop, and climb stairs, and rarely crouch/squat or climb ladders. *Id*. at 878. She could sit for less than two hours in an eight-hour workday and could stand/walk for less than two hours in an eight-hour workday. *Id*. at 876. Plaintiff must use a cane or other assistive while standing/walking. *Id*. at 877. She would also need to shift positions at will and take unscheduled 10-minute breaks every 30 minutes. *Id*. at 877-78. NP Moore also indicated that during an eight-hour workday, Plaintiff could use her hands and fingers to grasp, turn, twist, and do fine manipulation 20% of the time, use her arms to reach 30% of the time, and would likely be off-task more than 30% of the time. *Id*. at 878. She would be absent more than four days per month. *Id*. NP Moore indicated Plaintiff is not capable of sustaining full-time work. *Id*.

The ALJ found NP Moore's opinion unpersuasive because it was "not at all supported by the complete record of medical evidence as well as the objective clinical findings of her reports of physical examinations." *Id*. at 28. The ALJ concluded the "limitations stated in the RFC questionnaire appear to be primarily based and heavily influenced by the claimant's narrative rather than the objective clinical findings of physical examinations or results of clinical testing as the record of medical evidence documents." *Id*. at 29.

**B.     Analysis**

For claims filed on or after March 27, 2017, such as this one, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ will evaluate the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding.  *See id*. §§ 404.1520c(c), 416.920c(c).  Of those, the "factors of supportability . . . and consistency . . . are the most important factors." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion.  20 C.F.R. §§ 404.1520c (b)(2), 416.920c(b)(2). With respect to "supportability," the regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(1), 416.920c(c)(1).  With respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

In this case, the ALJ did not explicitly use the terms "supportability" and "consistency" with respect to each individual medical opinion.  *See* T. 26-30.  Plaintiff relies on the Second

Circuit's decision in *Loucks* and subsequent district court cases to support her contention that an ALJ's failure to "articulate the key factors of supportably and consistency" requires remand. *See* Dkt. No. 14 at 5-7.

Under the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks*, 2022 WL 2189293, at *2. However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.'" *Id*. (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)). None of the cases Plaintiff cites in her brief require an ALJ to explicitly use the terms "supportability" and "consistency" in their decision. *See* Dkt. No. 9 at 6-9. Rather, numerous cases have concluded that an ALJ errs where although the ALJ specifically used the terms "supportability" and "consistency," he or she failed to explain the application of those factors to the medical opinions. *See Amber H. v. Saul*, No. 3:20-CV-490 (ATB), 2021 WL 2076219, *6 (N.D.N.Y. May 24, 2021); *Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (collecting cases).

Here, the ALJ addressed each opinion in turn and explained what each source relied upon to come to their conclusions, how that impacted the persuasiveness of their opinions, and whether and to what extent the opinions were consistent with the record as a whole. *See Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-01314, 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis."); *see also Jennifer A.*, 2023 WL 8654215, at *4 (noting that an

11

ALJ analysis is legally proper, despite never using the words "supportability" or "consistency," when their articulation "is sufficient for the Court to glean [their] rationale"). In doing so, the ALJ summarized the conflicting evidence, properly evaluated the supportability and consistency factors, and explained why she credited the opinion of Dr. Susarla over those of Dr. Ahmed and NP Moore, as discussed below. *See Rushford v. Kijakazi*, No. 23-317, 2023 WL 8946622, at *1 (2d Cir. Dec. 28, 2023) ("[A]n ALJ is free . . . to choose between properly submitted medical opinions," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and even to "discount the opinion of a treating physician if it is inconsistent with other substantial evidence," *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).").

The ALJ reasonably found NP Moore's "very limited" opinion unpersuasive because it was "not at all supported by the complete record of medical evidence as well as the objective clinical findings of her reports of physical examinations." T. 28. In doing so, the ALJ referenced NP Moore's own treatment notes from June 15, 2021, and May 26, 2022, indicating Plaintiff's physical examination findings were within normal limits. *Id*. at 28; 501-02, 894-94. For example, on May 26, 2022, Plaintiff appeared "healthy, well developed and comfortable" and did not mention any symptoms of back pain. *Id*. at 892. Upon examination, Plaintiff's upper and lower extremities were normal to inspection and palpation. *Id*. at 26, 894. There was no tenderness. *Id*. at 894. Her motor strength was intact and she had full range of motion bilaterally. *Id*. at 894. Plaintiff's memory, judgment, and insight were grossly intact and her sleep was normal. *Id*. at 894.

The ALJ observed Plaintiff "provided a narrative of why she felt she is not able to do full-time work" during the May 26, 2022, office visit, and "mentioned that she has her own shop with her mother and makes jewelry but she cannot always use her fingers to twist, grip, or

12

manipulate." *Id*. at 28-29, 892 ("here to do disability paperwork for her lupus and scoliosis, chronic pain that causes her to not be able to work full time").  Upon examination, Plaintiff's physical examination findings were again within normal limits.  *Id*. at 894-94.

The ALJ also discussed the longitudinal medical record and Plaintiff's generally unremarkable physical examinations with her treating neurologist and rheumatologist indicating a normal gait and full strength in extremities, as well as reports of imaging studies, lab results, and EMGs from other providers that were generally unremarkable.  *Id*. at 29, 463-64, 470-76, 485, 493, 501, 512, 516, 523-24, 539-40, 566, 576-77, 580, 590-91, 595, 599-600, 619, 636, 768-69, 799, 874, 894.  Additionally, treatment notes did not document any missed appointments and mental status examinations documented consistently normal findings including intact memory, attention, and concentration.  *Id*. at 29, 501, 512, 516, 569, 580, 609, 636, 784, 894.

Thus, the ALJ reasonably inferred that "[t]he limitations that are stated in the RFC questionnaire appear to be primarily based and heavily influenced by the claimant's narrative rather than the objective clinical findings of physical examinations or results of clinical testing as the record of medical evidence documents."  *Id*. at 29.  Overall, the Court finds the ALJ properly evaluated the supportability and consistency factors in evaluating NP Moore's opinion and permissibly determined the opinion of Plaintiff's treating source was less persuasive than those of the state agency medical consultants.  *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (finding the ALJ properly considered opinion of treating physician where the opined limitations were inconsistent with the doctor's own treatment notes and plaintiff's self-reported activities of daily living); *see also Tibbles v. Comm'r of Soc. Sec.*, No. 22-1127, 2023 WL 3477127, at *2 (2d Cir. May 16, 2023).

Turning to the opinions of the state agency medical consultants, contrary to Plaintiff's assertion, the ALJ adequately discussed both the supportability and consistency factors and reasonably concluded Dr. Susarla's opinion was more persuasive than Dr. Ahmed's opinion because the former was "based upon the objective clinical findings of the medical evidence that was made available for review and the objective clinical findings are consistent with the complete record of medical evidence that was available at the hearing level." *See* T. 27; *see Julie M. v. Comm'r of Soc. Sec.*, No. 8:23-CV-518 (MJK), 2024 WL 664413, at *11 (N.D.N.Y. Feb. 16, 2024) (noting "consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them") (citation omitted).

While Plaintiff argues the ALJ did not cite to any evidence when making this statement, Dkt. No. 14 at 8, the ALJ's decision had already identified that evidence. Dkt. No. 16 at 11; *see, e.g.*, *Jeanette J. v. Saul*, No. 19-CV-0795 (ML), 2020 WL 4932047, at *5 (N.D.N.Y. Aug. 24, 2020) (finding the ALJ's discussion of records in a portion of the decision preceding his assessment of the physician opinion was sufficient to allow judicial review of the ALJ's finding that the opinion was or was not consistent with the evidence, noting that "[i]t is proper to read the ALJ's decision as a whole and it would be a needless formality to have the ALJ repeat substantially similar factual analyses"); *Disotell v. Comm'r of Soc. Sec.*, No. 7:16-CV-0480, 2017 WL 3491851, at *7 (N.D.N.Y. Aug. 14, 2017) (finding the ALJ provided "ample rationale" to support her determination that the opinion was inconsistent with medical evidence in the record where, "elsewhere in the decision," the ALJ outlined specific treatment notes and other objective medical evidence which was inconsistent with the restrictive limitations opined) (citing *Mongeur*, 722 F.2d at 1040) (noting when "the evidence of record permits us to glean the

14

rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient . . . .").

As highlighted by the Commissioner, the ALJ thoroughly considered the longitudinal evidence of record, Dkt. No. 16 at 9-12, including Plaintiff's subjective complaints of pain in the lumbar spine, asthma, lupus, and anxiety, T. 25, 44-45; her reported symptoms included tremors in her hands, brain fog, and limited abilities such that she could only lift a gallon of milk, sit for 20 minutes, stand for 10 minutes, and walk half a mile before needing to stop, *id*. at 25, 44-54, 363-67; her activities of daily living including caring for her son and her own personal needs, preparing meals, doing laundry, washing dishes, cleaning the house, driving, shopping in stores, and making jewelry, *id*. at 25, 363-67, 709-10; and treatment records noting consistently mild or unremarkable physical examination findings and objective testing results, *id*. at 19-21, 26-29, 485, 493, 501, 512, 516, 523-24, 539-40, 566, 569, 576-77, 580, 59-91, 595, 599-600, 619, 636, 768-69, 799, 874, 895.  Accordingly, the Court finds the ALJ addressed the "most important" factors of consistency and supportability regarding the opinion of Dr. Susarla and substantial evidence supports the ALJ's findings.  *See* 20 C.F.R. §§ 404.1520c(c)(3),(4); 416.920c(c)(3),(4).

The Court likewise finds the ALJ conducted the required analysis in evaluating the opinion of Dr. Ahmed.  *See* T. 27.  Specifically, the ALJ assessed whether Dr. Ahmed's "more restrictive" opinion was supported by "the additional medical evidence that was made available to Dr. Ahmed prior to his determination," and reasonably concluded it was not.  *Id*.

For example, the September 28, 2021, progress note from UHS Heath & Vascular Institute indicates Plaintiff reported "palpitations; feels like heart races.  She reports she had dyspnea on exertion related to palpitations and sometimes she sees stars and has to sit down.  She

15

rests for a few minutes and these pass.  Episodes have gone on for over several months. . . . She does feel chest discomfort[.]" *Id*. at 722-23.  Yet, upon examination, Plaintiff's heart rate was normal, she had regular rhythm, she was oriented to person, place, and time, and displayed normal behavior normal.  *Id*.  The Holter monitor study conducted between September 28, 2021, and October 1, 2021, was described as a "benign Holter study with patient symptoms correlating with sinus tachycardia." *Id*. at 834.  No "atrial or ventricular arrhythmias were noted during the study." *Id*.  The complete echocardiogram exercise stress test performed on November 5, 2021, was reported as "normal" with "no evidence of ischemia based on symptoms, electrocardiogram and echocardiogram images," and Plaintiff's exercise capacity was preserved. *Id*.

Plaintiff's contention the ALJ erred in her evaluation of Dr. Ahmed's opinion because she did not specifically mention the September 28, 2021, cardiac evaluation, the Holter monitor study, or Post Covid Syndrome diagnosis is unpersuasive.  Dkt. No. 14 at 8-9; Dkt. No. 16 at 13.  It is well-settled, "'an ALJ does not have to state on the record every reason justifying a decision' or 'discuss every piece of evidence submitted.'" *Gauda v. Comm'r of Soc. Sec.*, No. 23-594, 2024 WL 886595, at *2 (2d Cir. Mar. 1, 2024) (summary order) (quoting *Brault v. Soc. Sec. Admin*, 683 F.3d 443, 448 (2d Cir. 2012)); *see also Strange v. Comm'r of Soc. Sec.*, No. 6:13-cv-527, 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014) ("the mere fact that a specific portion of evidence is not *discussed* in a decision does not mean that it was not *considered*.") (emphasis in original) (citation omitted).

As noted, the ALJ's decision indicates she reviewed the "additional medical evidence that was made available to Dr. Ahmed prior to his determination," indicating the September 28, 2021, treatment note and cardiology testing.  (T. 27.)  Thus, Plaintiff's arguments to the contrary amount to nothing more than a disagreement with how the ALJ weighed the evidence, which is

16

within her province to do. *See Robert P. v. Comm'r of Soc. Sec.*, No. 1:23-CV-0975, 2024 WL 3173515, at *6 (W.D.N.Y. June 26, 2024) (citing *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *see also Cruz o/b/o M.M.W. v. Comm'r of Soc. Sec.*, No. 19-cv-9253, 2021 WL 4123969, at *13 (S.D.N.Y. Aug. 25, 2021) ("[T]he reviewing court's task is limited to determining whether substantial evidence exists to support the ALJ's fact-finding; it may not reweigh that evidence or substitute its judgment for that of the ALJ where the evidence is susceptible of more than one interpretation."), *report-recommendation adopted*, 2021 WL 4124225 (S.D.N.Y. Sept. 9, 2021)). Moreover, it is not error for an ALJ to discount a medical source opinion where, as here, the ALJ supportably finds inconsistencies with evidence of Plaintiff's activities, along with the medical record as a whole. *See Deanna T. v. Comm'r of Soc. Sec.*, No. 6:23-CV-06034, 2024 WL 860999, at *4 (W.D.N.Y. Feb. 29, 2024) (citing *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (finding that ALJ did not err in declining to credit medical opinion that was inconsistent with the claimant's reported activities of daily living)).

Plaintiff argues the ALJ failed to consider the consistency of NP Moore's opinion with Dr. Ahmed's opinion. Dkt. No. 14 at 9-10. Plaintiff notes both Dr. Ahmed and NP Moore opined Plaintiff could only occasionally stoop and both placed significant restrictions on crawling and crouching. *Id*. at 9; T. 96, 878. But "[t]he consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical evidence in a claim." *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-cv-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) (emphasis in original). Thus, contrary to Plaintiff's contention, the ALJ was "not

17

required to specifically assess the consistency between their opinions as long as [s]he considered their consistency with the record as whole." *David C. v. Comm'r of Soc. Sec.*, No. 1:22-CV-00965, 2024 WL 376598, at *4 (W.D.N.Y. Feb. 1, 2024) (citing *Rushford v. Kijakazi*, No. 23-cv-317, 2023 WL 8946622, at *2 (2d Cir. Dec. 28, 2023) ("As required, the ALJ addressed each opinion in turn, explaining why – or why not – he found each opinion to be 'supported' by the record and 'consistent' with the other evidence.")).

Here, the ALJ accurately and comprehensibly discussed the opinions of Dr. Susarla, Dr. Ahmed, and NP Moore in succession and the ALJ's discussion reflects that Dr. Ahmed and NP Moore both assessed postural limitations while Dr. Susarla did not. *See* T. 26-28; *see also* Dkt. No. 16 at 14-15. "[T]o the extent [Plaintiff] "faults the ALJ for failing to explicitly discuss the consistency of each medical opinion with specific other opinions, '[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision.'" *Villier on behalf of N.D.D.R. v. Comm'r of Soc. Sec.*, No. 23-893-CV, 2024 WL 2174236, at *3 (2d Cir. May 15, 2024) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (per curiam)) (internal quotation marks and citation omitted).

As discussed above, the ALJ evaluated the supportability and consistency factors and concluded that the limitations Dr. Ahmed and NP Moore identified including the postural limitations were neither supported by the objective evidence nor consistent with the complete medical record. Accordingly, "the Court finds no basis to conclude that the ALJ committed legal error by finding those opinions' inconsistency with the overall record more salient than any 'internal' consistency among them." *Young v. Kijakazi*, No. 20-CV-03604, 2021 WL 4148733, at *10-11 (S.D.N.Y. Sept. 13, 2021) ("[N]othing in the regulations (or case law cited by Plaintiff) specifically requires that an ALJ discuss this sort of 'internal' consistency, or holds

that, where an ALJ finds that multiple medical opinions are inconsistent with other evidence in the record, such inconsistency is necessarily trumped by consistency among those medical opinions.").

Based upon a careful review of the record, the Court finds the ALJ properly assessed the medical evidence and opinions, considered Plaintiff's activities, and accounted for the record as a whole in determining Plaintiff's RFC. Accordingly, the Court finds no error and remand is not necessary.

## V.    CONCLUSION

**WHEREFORE**, it is hereby

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 14) be **DENIED** and Defendant's motion for judgment on the pleadings (Dkt. No. 16) be **GRANTED**. Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: July 17, 2024
      Syracuse, New York

_____
Thérèse Wiley Dancks
United States Magistrate Judge